UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:02CR176 (SRU) |
| | : | |
| v. | : | |
| | : | |
| RONNIE JAMES, a.k.a. "Black" | : | JANUARY 12, 2006 |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
BRIEF ADDRESSING THE CROSBY REMAND

The Government respectfully submits the instant response to the defendant's Brief Addressing the Second Circuit's Crosby remand. In his brief the defendant raises several arguments. First, he claims that he is entitled to have a jury trial on the issue of whether he is entitled to a substantial assistance downward departure. Second, he claims that he is entitled to withdraw his guilty plea. Third, he claims that the mandatory minimum sentence imposed by the Court is unconstitutional because it exceeds his purported sentencing guideline range and thus violates various provisions of the United States Constitution. None of these claims has merit and the Court must re-sentence the defendant to the mandatory minimum sentence of 120 months.

BACKGROUND

The matters that are relevant in this case have been presented in numerous motions and briefs filed before this Court prior to the defendant's sentencing. In the interest of economy, the Government will not repeat those facts again.

DISCUSSION

1.    The Defendant Is Not Entitled to Re-Sentencing Under
      Crosby

The first matter that this Court must address is the

authority it has to entertain any of the defendant's claims.

Indeed, the Order remanding this case to the District Court

provided as follows:

> In light of the Supreme Court's decision in United
> States v. Booker, 125 S. Ct. 738 (2005), and this
> Court's decision in United States v. Crosby, 397 F.3d
> 103 (2d Cir. 2005), this case is remanded so that the
> District Court may consider whether to re-sentence
> defendant, in conformity with the currently applicable
> statutory requirements explicated in the Crosby
> opinion.  Upon reaching its decision, the District
> Court should either place on a record a decision not to
> re-sentence, with an appropriate explanation, or vacate
> the sentence and, with defendant present, resentence in
> corformity with the Sentencing Reform Act, Pub.L.
> 98-473, Title II, 211-238,98 Stat. 1987 (1984), Booker
> and Crosby.  The [disposition] in the opinion or order
> previously issued in connection with this appeal is
> hereby made a part of this order and is fully
> effective, except to the extent that it is incosistent
> with the present remand in conformity with Crosby.  Any
> appeal taken from District Court following this remand
> and re-sentencing, if it occurs, can be initiated only
> by filing a new notice of appeal.  See Fed. R. App. P.
> 3, 4(b).  A party will not waive or forfeit any
> appropriate argument on remand or any appeal post
> remand by not filing a petition for rehearing of this
> remand order.  The mandate shall be issue forthwith.

In United States v. Booker, 125 S. Ct. 738 (2005), the

Supreme Court held that the United States Sentencing Guidelines,

as written, violate the Sixth Amendment principles articulated in

2

Blakely v. Washington, 124 S. Ct. 2531 (2004), and determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. There is no violation of the defendant's Sixth Amendment rights, however, where the defendant is sentenced to the mandatory minimum sentence based upon judicial fact finding, so long as that minimum does not exceed the otherwise applicable maximum sentence. See United States v. Harris, 536 U.S. 545, 557 (2002). In Booker, the Supreme Court confirmed that there is no violation of a defendant's Sixth Amendment rights if he was sentenced within the applicable maximum sentence established by the facts found by a jury or admitted by the defendant. United States v. Booker, 125 S. Ct. at 750.

Applying Booker in United States v. Sharpley, 399 F.3d 123 (2d Cir. 2005), pet'n for cert. filed, No. 04-10167 (May 14, 2005), the Second Circuit held that where a defendant is sentenced to the mandatory minimum sentence established by statute, any error committed by the district court in mandatorily applying the Sentencing Guidelines is harmless and therefore does not warrant a remand. That is precisely the situation presented in the case at bar.

Here, the defendant pleaded guilty and admitted that he possessed with the intent to distribute at least 5 grams of

3

cocaine base.  The defendant's admission to this quantity and type of narcotic, coupled with his previous drug conviction, established a maximum penalty of life imprisonment and a mandatory minimum penalty of ten years' imprisonment.  Based upon the quantity of cocaine base he admitted to possessing, the defendant was sentenced to the mandatory minimum ten-year term of imprisonment.  Thus, there is no Sixth Amendment violation. Moreover, even if the district court erred in applying the Sentencing Guidelines in a mandatory fashion to arrive at the sentence, the defendant could not obtain a lower sentence on remand because he has already received the lowest sentence permissible under the statute – 120 months.  Accordingly, no re-sentencing is warranted.

In view of the fact that this matter was remanded under Crosby, which is a limited remand, this Court is bound to impose a sentence of no less than 120 months.  In fact, this is exactly what happened in Sharpley.  There, the defendant's guideline range was 108 to 135 months.  The guideline sentence was set to 180 months in accordance with the statutory mandatory minimum and, therefore, "any reduction in the calculated guideline range could not reduce Sharpley's actual sentence."  United States v. Sharply, 399 F.3d 123, 127 n. 3 (2d Cir. 2005).

4

    2.    <u>The Defendant is Not Entitled to A Jury Trial on His
          Claim of Substantial Assistance</u>.

    The defendant next claims under <u>Booker</u> that his ten year
sentence is not mandatory unless a factual finding is made that
his efforts at cooperation do not entitle him to a substantial
assistance departure and that under the Sixth Amendment he is
entitled to have a jury make that determination.  As part of that
claim, he also asserts that because the Sentencing Guidelines are
no longer mandatory, no government motion is required in order
for the defendant to receive such a departure.

    The defendant's argument misconstrues <u>Booker</u> at its most
basic level.  In <u>Booker</u>, the Supreme Court squarely held that
judicial factfinding is only a constitutional stumbling block
under the Sixth Amendment when it *increases* the maximum sentence
to which a defendant is subjected.  <u>See</u> <u>Booker</u>, 125 S. Ct. at
749.  Judicial factfinding by a preponderance of the evidence is
entirely permissible when used to set the minimum sentence to
which a defendant will be subject.  <u>Harris v. United States</u>, 536
U.S. 545, 560 (2002); <u>see also</u> <u>United States v. Sharpley</u>, 399
F.3d 123, 126-27 (2d Cir. 2005) (holding that sentencing under
mandatory guidelines regime is harmless where defendant receives
mandatory minimum sentence).  If judges may make findings that
establish a sentencing floor, then *a fortiori* they may make

5

findings that drop a defendant's sentence below that floor as with a defendant's substantial assistance and, for that matter, safety valve eligibility.  See Crosby, 397 F.3d at 110 n.8.[1]

In this regard, this Court should follow the First and Tenth Circuits in holding that the Sixth Amendment permits sentencing judges to determine safety-valve eligibility based upon judicial factfinding, which is analogous to the judicial factfinding at issue in this case, and the First Circuit regarding substantial assistance departures, because such decisions do not increase the maximum penalty to which the defendant is exposed.  Thus, in United States v. Bermudez, 407 F.3d 536 (1st Cir. 2005), the First Circuit rejected a Booker challenge to the safety valve and substantial assistance premised on the claim that factfinding on safety-valve elements and cooperation departures had to be made by a jury beyond reasonable doubt.  As the court explained, "a factual finding resulting in the denial of a sentencing reduction . . . is scarcely an 'enhancement'" which triggers Sixth Amendment requirements.  Id. at 544.

Likewise, in United States v. Payton, 405 F.3d 1168, 1173 (10th Cir. 2005), the Tenth Circuit rejected a similar challenge to judicial factfinding under U.S.S.G. § 5C1.2(a)(2), the

---

[1]  The same reasoning applies to both safety valve eligibility and substantial assistance motions.

Guidelines analogue to § 3553(f).  According to the Tenth
Circuit, "[n]othing in Booker's holding or reasoning suggests
that judicial fact-finding to determine whether a lower sentence
than the mandatory minimum is warranted implicates a defendant's
Sixth Amendment rights."  See also United States v. Rojas-Coria,
401 F.3d 871, 874 n.4 (8th Cir. 2005) (affirming district court's
holding that defendant was ineligible for safety-valve relief,
based on judicial factual finding that defendant had not
disclosed all relevant information; noting that Booker did not
impact case, because defendant's sentence "was not based upon an
application of the United States Sentencing Guidelines but rather
upon the mandatory minimum sentence set forth in 21 U.S.C. §
841(b)(1)(A)").

    In sum, nothing in 18 U.S.C. §§ 3553(e) and (f) can cause
the defendant's sentence to be higher than the statutory maximum.
Further, the eligibility for a substantial assistance departure
does not implicate an enhancement but rather a possible reduction
of a defendant's sentence, there is no Sixth Amendment violation
and Booker simply does not apply.

    Moreover, the defendant's claim that the motion requirement
is no longer mandatory ignores that the motion requirement is
imposed by statute as well as by the Guidelines.  Title 18,
United States Code, Section 3553(e), entitled "Limited authority

to impose a sentence below a statutory minimum," provides that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.  Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code."

Again, the motion requirement is imposed by statute.  The mere fact that the guidelines are no longer mandatory does not displace the motion requirement imposed by statute.  Thus, nothing in <u>Booker</u> assists the defendant in his claim for either a jury trial on the sentence reduction or the need for a motion by the government.

3.    <u>The Defendant is Not Entitled To Withdraw His Guilty Plea</u>.

The defendant next claims that he is entitled to withdraw his guilty plea and proceed to trial on his guilt.  The defendant's entire claim is based on a false premise.  Specifically, he claims that "[t]he case is before the court for a sentencing evaluation.  The effect of the remand is that it is though Defendant James has not been sentenced."  Def. Brief at 7.

He also states that "[t]he court is to take a fresh look at the defendant's sentence.  There are no presumptions of correctness to be indulged." Id.  These assertions, of course, are untrue. As this Court is aware, remands pursuant to Crosby are limited remands.  Indeed, the Second Circuit's Order itself provides in pertinent part as follows:

> this case is remanded so that the District Court may consider whether to re-sentence defendant, in conformity with the currently applicable statutory requirements explicated in the Crosby opinion.  Upon reaching its decision, the District Court should either place on a record a decision not to re-sentence, with an appropriate explanation, or vacate the sentence and, with defendant present, resentence in conformity with the Sentencing Reform Act . . . .

Here, the defendant proceeds under the premise that he can withdraw his guilty plea because he is now in the position of not having been sentenced.  As noted above, this is an incorrect statement of the procedural posture of this case.  Because the defendant was sentenced to a mandatory minimum sentence that procedural posture will not change.  And as Rule 11 of the Federal Rules of Criminal Procedure expressly provide, a defendant can only withdraw a guilty plea before the court accepts the plea, Fed.R.Crim.P. 11(d)(1), or after the court accepts the plea but before it imposes sentence, Fed.R.Crim.P. 11(d)(1).  Rule 11(e) further provides that after sentence is imposed a plea may only be set aside on direct appeal or on

collateral attack.

The defendant did not raise this issue on appeal and has therefore waived it.  The Second Circuit has long held that failure to raise a claim in a merits brief or at oral argument constitutes waiver of the claim, unless "'manifest justice otherwise would result.'"  United States v. Quiroz, 22 F.3d 489, 490 (2d Cir. 1994) (quoting United States v. Babwah, 972 F.2d 30, 35 (2d Cir. 1992)); see also LoSacco v. City of Middletown, 71 F.3d 88, 92-93 (2d Cir. 1995) (holding that an issue is abandoned where not raised in appellate brief); Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999) (argument raised for first time in reply brief is waived).  Here, of course, the defendant has waived the claim because it is only being raised for the first time after a limited remand in which, frankly, this Court may only reimpose the sentence it imposed the first time because the remand is governed by Crosby and Sharpley.  Thus, the defendant's efforts to withdraw his guilty plea should be rejected.

4.    The Defendant's Sentence is Not Unconstitutional.

The defendant next claims that the Court should declare unconstitutional a mandatory minimum sentence that exceeds a sentencing guideline range.  He bases this argument on the Eighth Amendment prohibition against Cruel and Unusual Punishment, the Equal Protection Clause of the Fourteenth Amendment, and the Due

10

Process Clauses of the Fifth and Fourteenth Amendments.  These claims have no merit.

The defendant first contends that his sentence was unconstitutional because he should have been sentenced under the Guidelines, which have been established by Congress's duly chosen "expert body."  Def. Brief at 8-12.  The government does not quarrel with the defendant's assertion that the Sentencing Commission is the expert body designated by Congress.  However, it does seriously question the defendant's grasp of the Guidelines and what the application of the rules promulgated by the expert body calls for in this case.  Simply put, the expert body has unequivocally determined that statutory minimum controls in situations where the guidelines range as calculated by the Manual suggests a lower sentence.

United States Sentencing Guidelines § 5G1.1 expressly dictates that statutory maxima and minima control over conflicting guideline sentences.  Specifically, § 5G1.1 reads as follows:

> (a) If application of the guidelines results in a sentence above the maximum authorized by statute for the offense of conviction, the statutory maximum shall be the guideline sentence.

> (b) If application of the guidelines results in a sentence below the minimum sentence required by statute, *the statutory minimum shall be the guideline sentence*.

> (c) In any other case, the sentence imposed shall be the sentence as determined from the application of the guidelines.

(emphasis added).  In interpreting this provision, the Second Circuit has repeatedly held that "if there is a discrepancy between the Guidelines range and a minimum prison term provided by statute, the statutory provision controls." United States v. Larotonda, 927 F.2d 697, 698 (2d Cir. 1991) (per curiam); see also United States v. Smith, 354 F.3d 171, 175 (2d Cir. 2003) ("when an act of Congress conflicts with a Guideline, the statute controls"); United States v. Gonzalez, 922 F.2d 1044, 1050-51 (2d Cir. 1991) (holding that where statute mandates minimum of life imprisonment, it is "necessarily the Guidelines sentence as well").

Here, the Court did apply the guidelines.  But unfortunately for the defendant, they provide that where the guidelines sentence would be less than the statutory minimum, that statutory minimum "shall be the guideline sentence." See U.S.S.G. § 5G1.1(b).  Thus, even if he were correct that the Guidelines would normally have called for a sentencing range of 51-63 months, he simply overlooks § 5G1.1.  Thus, when the defendant argues that the court erred by not imposing a sentence within the guidelines range, he misses the point that a statutory minimum is the guidelines range in this case.

Further, because the guidelines are advisory, any hypothetical conflict between the guidelines and the statute would be resolved in favor of the statute.  The Supreme Court's decision in <u>Booker</u> excised subsection 3553(b)(1) of Title 18, thereby eliminating the requirement that the Sentencing Guidelines be applied in a compulsory manner.  <u>See</u> <u>United States v. Crosby</u>, 397 F.3d 103, 108-14 (2d Cir. 2005).  Accordingly, even if there were any conflict between the sentencing range recommended by the Guidelines, and a minimum sentence established by statute, any conflict would necessarily be resolved in favor of the statute because only the latter is legally binding.  This was certainly true before <u>Booker</u>, even when the Guidelines were binding upon sentencing courts.  <u>See</u> <u>Mistretta v. United States</u>, 488 U.S. 361 (1989) (holding that the federal sentencing guidelines are rules which, to pass constitutional muster, must be consistent with the statutes; they cannot be superior to them).  By declaring that the Guidelines are now advisory, <u>Booker</u> only reinforces the notion that the Guidelines are inferior to any statute.[2]

---

[2]  This reasoning also applies to the defendant's argument regarding the non-mandatory nature of the guidelines as applied to the requirement of a motion for downward departure based on substantial assistance versus the mandatory nature of the motion under the statute.

Next, despite the defendant's claim otherwise, the mandatory minimum sentence to which the defendant is subject under 21 U.S.C. § 841 is rational.  The defendant essentially argues that it is irrational to apply the mandatory minimum 120-month sentence to him.  This argument misunderstands the nature of rational basis review, in which acts of Congress are "accorded a strong presumption of validity," Heller v. Doe, 509 U.S. 312, 319 (1993), and need not result in the most just or logical result in every case to pass constitutional muster.  See id. at 321 ("A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality.") (internal quotation marks omitted). To the contrary, a law will be upheld under rational basis review if any reasonably conceivable state of facts "could demonstrate that the statute is rationally related to a legitimate government purpose." Id. at 320 (internal quotation marks omitted).  This is the standard of review because the judicial system has long recognized that "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations – illogical, it may be, and unscientific." Id. at 321 (internal quotation marks omitted).

As the Second Circuit has explained, "[t]o sustain a federal sentencing statute against a due process challenge, courts need

14

only find that Congress had a rational basis for its choice of penalties." <u>United States v. Meskini</u>, 319 F.3d 88, 91 (2d Cir. 2003) (internal citations and punctuation omitted).

To conclude that Congress acted rationally when it created mandatory minimum sentences to punish prolific and incorrigible drug traffickers, and to ensure that the statutory minimum sentence imposed in this matter following the defendant's second felony drug conviction is not an irrational result, this Court need look no further than the Supreme Court's statement in <u>United States v. LaBonte</u>, 520 U.S. 751 (1997). In that case, the Court interpreted an amendment to the Sentencing Guidelines relating to the Career Offender rules located at U.S.S.G. § 4B1.1 and, in so doing, explained that

> to read the phrase "categories of defendants" as respondents suggest would largely eviscerate the penalty enhancements Congress enacted in statutes such as § 841. We are unwilling to read § 994(h) as essentially rendering meaningless entire provisions of other statutes to which it expressly refers. Under respondents' novel construction, a repeat drug or violent felon could only receive a sentence at or near the maximum allowed for defendants who had no such prior qualifying convictions or who had never received the notice under § 851(a)(1). Indeed, if this interpretation of the term "categories" were adopted, a sentencing court could be forbidden to impose the enhanced maximum penalty. Congress surely did not establish enhanced penalties for repeat offenders only to have the Commission render them a virtual nullity.

<u>Id</u>. at 760 (second emphasis added).

15

Moreover, in <u>United States v. Pineda</u>, 847 F.2d 64 (2d Cir. 1988) (per curiam), the Second Circuit held that the mandatory minimum sentencing provisions relating to narcotics trafficking do not violate the principles of due process or equal protection. <u>Id</u>. at 65.  In <u>Pineda</u>, the defendant argued "that the mandatory minimum sentence provisions of 21 U.S.C. § 841(b)(1) deprived him of his rights to due process and equal protection [on the grounds] the statute's classification of penalties based on quantity of narcotics had no rational basis since it does not account for the purity of the narcotics or whether the defendant had a 'peripheral role' in distributing the narcotics, and does not require that a defendant know the amount of narcotics involved."  <u>Id</u>.  In rejecting this argument as "frivolous," <u>id</u>., the Second Circuit looked to its decision in <u>United States v. Collado-Gomez</u>, 834 F.2d 280 (2d Cir. 1987) (per curiam), and explained that

> Congress's purpose in enacting enhanced penalties was to deter particularly insidious drug transactions . . . .  Second, the statute's enhanced penalty provisions did not in any way criminalize otherwise innocent activity or create a trap for the unwary, because the statute requires proof that a defendant knowingly and intentionally possessed a controlled substance.  In light of Congress's clear and rational purpose, we conclude[] that it did not offend due process for narcotics defendants to bear the risk of enhanced penalties based on aggravating factors, such as the nature and amount of the controlled substance involved.

Id. (citing <u>Collado-Gomez</u>, 834 F.2d at 281).  The Government respectfully submits that the same "clear and rational purpose" applies with equal force to drug dealers who, having sustained a prior drug conviction, should "bear the risk of enhanced penalties."  <u>Id</u>.

The defendant essentially argues that the statutory mandatory minimum sentence is irrational because, in certain cases such as his, "there is no reason not to proceed to trial" because an adjustment for acceptance of responsibility would not enable the defendant to benefit from a sentencing guideline range which is below the mandatory minimum sentence.  Yet Congress has expressly considered the circumstances in which such a below-minimum sentence would be appropriate, and has legislated very narrow exceptions to deal with this concern.  One of those exceptions is provided in 18 U.S.C. § 3553(e), which permits a sentencing court to go below an otherwise applicable statutory minimum sentence upon motion of the government certifying that a defendant has provided substantial assistance in the investigation or prosecution of another person.  The other exception is set forth in 18 U.S.C. § 3553(f), the "safety valve" provision.  That provision allows a district court to impose a sentence below the statutory minimum in certain drug cases where the defendant meets five specified criteria – including, <u>inter</u>

alia, a minimal criminal history, and the truthful and complete

provision of certain information about the offense to the

government.  See generally United States v. Reynoso, 239 F.3d

143, 148 (2d Cir. 2000) ("Congress intended to provide relief

from statutory minimum sentences to those defendants who, but for

their minor roles in criminal activity, could (and would) have

provided the Government with substantial assistance.") (emphasis

in original).  The fact that Congress has seen fit to reserve

safety-valve treatment for minimally culpable offenders unlike

James can hardly be said to be irrational, as would be required

for him to make out a due process or equal protection challenge

to the mandatory minimum sentence.

    In sum, the defendant, who cites no authority for his

position, cannot show that the application of the statutory

minimum ten-year prison term in his case is irrational given his

prior drug conviction.

    Nor does the imposition of the statutory minimum constitute

cruel and unusual punishment.  "[T]he Eighth Amendment prohibits

imposition of a sentence that is grossly disproportionate to the

severity of the crime."  Rummel v. Estelle, 445 U.S. 263, 271

(1980).  "Rummel stands for the proposition that federal courts

should be reluctant to review legislatively mandated terms of

imprisonment, and that successful challenges to the

proportionality of particular sentences should be exceedingly rare." Hutto v. Davis, 454 U.S. 370, 374 (1982) (per curiam) (internal quotation marks, alteration, and citation omitted). "In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." Solem v. Helm, 463 U.S. 277, 290 n. 16 (1983). But "as a matter of principle . . . a criminal sentence must be proportionate to the crime for which the defendant has been convicted." Id. at 290. Therefore, in deciding the constitutionality of a sentence, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

Id. at 292; see also United States v. Santos, 64 F.3d 41, 46 (2d Cir. 1995), vacated on other grounds, 516 U.S. 1156 (1996).

Thus, the "Eighth Amendment condemns only punishment that shocks the collective conscience of society." United States v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991). In this regard, the Second Circuit has held that mandatory minimum sentences

19

required by 21 U.S.C. § 841 do not constitute cruel and unusual
punishment under the Eighth Amendment.  See United States v.
Jackson, 59 F.3d 1421 (2d Cir. 1995) (per curiam) (upholding
ten-year mandatory sentence for possession of 300 grams of
cocaine base, and citing Harmelin v. Michigan, 501 U.S. 957,
994-96 (1991), for proposition that even mandatory sentences of
life imprisonment without the possibility of parole do not
violate the Eighth Amendment simply because they are mandatory)

Lastly, the defendant argues that his sentence violates the
Eighth Amendment because it is disproportionate to the crime of
which he was convicted.  The Second Circuit has stated that
"[l]engthy prison sentences, even those that exceed any
conceivable life expectancy of a convicted defendant, do not
violate the Eighth Amendment's prohibition against cruel and
unusual punishment when based on a proper application of the
Sentencing Guidelines or statutorily mandated consecutive terms."
United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003)
(emphasis added, citations omitted); see also Rummel, 445 U.S. at
265-66, 272, 285.  Continuing, Yousef explained that

> The Eighth Amendment 'forbids only extreme sentences
> that are "grossly disproportionate" to the crime,'
> Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)
> (Kennedy, J., concurring in part and concurring in the
> judgment) (quoting Solem v. Helm, 463 U.S. 277, 288
> (1983)), and, with the exception of capital punishment
> cases, successful Eighth Amendment challenges to the

20

proportionality of a sentence have been 'exceedingly rare.' <u>Rummel v. Estelle</u>, 445 U.S. 263, 272 (1980).

<u>Id</u>. (parallel citations omitted).

Here, the defendant committed a serious drug crime after having previously committed a serious drug crime. The severity of the crime is clear. <u>See</u> <u>Pineda</u>, 847 F.2d at 65 (Congress enacted enhanced drug laws as means to deter insidious drug transactions); <u>see also</u> <u>United States v. Estrada</u>, 428 F.3d 387, 389, n.1 (2d Cir. 2005) (noting, in context of determining that prior convictions are not elements of crime to be found by jury, that "recidivism is a traditional sentencing factor"). The penalty that Congress has chosen to impose is a mandatory ten years. This is certainly a harsh penalty, but it cannot be said that the defendant will die in prison. Nor can it be said that this sentence is so grossly disproportionate to the crime as to require a lengthy comparative analysis because "[t]he severity of [defendant's] crime brings his sentence within the constitutional boundaries established by [the Supreme Court's and Second Circuit's] prior decisions." <u>See</u> <u>Harmelin</u>, 501 U.S. at 1004.

For example, courts have upheld higher sentences for crimes that are arguably less serious than those in the case at hand against Eighth Amendment challenges. <u>Hutto</u>, 454 U.S. at 372-73 (forty-year sentence for possession with intent to distribute

nine ounces of marijuana); Rummel, 445 U.S. at 285 (life sentence under state recidivist statute in which the three predicate offenses were fraudulent use of a credit card to obtain $80 worth of goods, passing a forged check for $28.36, and obtaining $120.75 by false pretenses); United States v. Valdez, 16 F.3d 1324, 1334 (2d Cir. 1994) (life imprisonment without parole for "merely middle-level drug dealers"); United States v. Mitchell, 932 F.2d 1027, 1029 (2d Cir. 1991) (rejecting defendant's Eighth Amendment claim pertaining to imposition of the fifteen-year mandatory minimum sentence called for by 18 U.S.C. § 924(g) and holding instead that "legislative determinations of terms of imprisonment are 'primary and presumptively valid,' and should be reviewed for disproportionality only in rare cases") (citing Gonzalez, 922 F.2d at 1053); United States v. Saccoccia, 58 F.3d 754, 786-89 (1st Cir. 1995) (upholding 660-year sentence for racketeering, money laundering, and related offenses); United States v. Berryhill, 880 F.2d 275, 277 (10th Cir. 1989) (affirming 300-year sentence for kidnaping and related crimes), overruled in part on other grounds, United States v. Daily, 921 F.2d 994, 1004 (10th Cir. 1990); United States v. Salerno, 868 F.2d 524, 543 (2d Cir. 1989) (upholding 100-year sentences for RICO violations in face of Eighth Amendment challenges); United States v. Rosenberg, 806 F.2d 1169, 1176 (3d Cir. 1986)

(fifty-eight year sentence for possession of unregistered firearms, explosives, and false documents); Rothgeb v. United States, 789 F.2d 647, 651 (8th Cir. 1986) (affirming consecutive terms of life imprisonment for first-degree murder and 210 years for second-degree murder); Anthony v. United States, 331 F.2d 687, 688, 693-94 (9th Cir. 1964) (forty-year sentence for two marijuana sales by first-time offender).

In addition, the mandatory nature of the sentence does not constitute cruel and unusual punishment. "[E]ven mandatory sentences of life imprisonment without the possibility of parole do not violate the Eighth Amendment simply because they are mandatory." Jackson, 59 F.3d at 1424 (citing Harmelin, 501 U.S. at 994-96). In Chapman v. United States, 500 U.S. 453, 465 (1991), the Supreme Court observed that

> Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. Bell v. Wolfish, 441 U.S. 520, 535, 536, and n.16 (1979). But a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, McMillan v. Pennsylvania, 477 U.S. 79, 92, n. 8 (1986); Meachum v. Fano, 427 U.S. 215, 224 (1976), and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. In this context, as we noted in Jones v. United States, 463 U.S. 354, 362, n. 10 (1983), an argument based on equal protection essentially duplicates an argument based on

due process.   (Parallel citations omitted).

In this case, the defendant, who previously was convicted of a drug crime, was sentenced to 120 months – even though he faced a maximum term of incarceration of life.  He therefore cannot show that his sentence was cruel and unusual.  Nor can he argue more generally that the existence of mandatory minimum sentences for certain quantities of drug crimes is a violation of the Eighth Amendment.

CONCLUSION

In sum, this case is before the Court for the limited purpose of determining whether the Court would impose a different sentence subsequent to the decision in <u>Booker</u>.  The Court imposed the lowest sentence it could impose under the statute.  Thus, it can do no less.  The Court should refuse to re-sentence the defendant but should simply explain, primarily for the reasons set forth above, that a re-sentencing is unnecessary.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


JAMES K. FILAN, JR.
ASSISTANT UNITED STATES ATTORNEY
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000
FEDERAL BAR NO. ct15565

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent via

United States mail, postage prepaid, on this date, to:

Robert J. Sullivan, Jr., Esq.
190 Main Street
Westport, CT 06880

Dated at Bridgeport, Connecticut this 12th day of January,

2006.

_____
JAMES K. FILAN, JR.
ASSISTANT UNITED STATES ATTORNEY